UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **JUDY H. PETITT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | NO. 3:14-cv-01716 |
| ) | Judge Crenshaw |
| **NANCY BERRYHILL,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Pending before the Court is Plaintiff Judy H. Petitt's ("Petitt") Motion for Judgment on the Administrative Record ("Motion") (Doc. No. 11), filed with a Memorandum in Support (Doc. No. 12). Defendant Commissioner of Social Security ("Commissioner") filed a Response in Opposition to Plaintiff's Motion (Doc. No. 13). Upon consideration of the parties' filings and the transcript of the administrative record (Docket No. 9),[1] and for the reasons given below, the Court will **GRANT** Petitt's Motion pursuant to the sixth sentence of 42 U.S.C. § 405(g) and **REMAND** to the ALJ for a decision after consideration of the new evidence.

### I. Introduction

On May 11, 2011, Petitt filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), alleging a disability onset of September 28, 2010 ("alleged onset date"). (A.R. 129.) Petitt's claim was denied at the initial and reconsideration stages of state agency review. (Id. at 60, 59.) Petitt subsequently requested de novo review of her case by an Administrative Law Judge ("ALJ"). (Id. at 79.) The ALJ heard the case on February

---

[1] Referenced hereinafter by page number(s) following the abbreviation "A.R."

26, 2013, where Petitt appeared with a representative. (Id. at 29.) Pettit and an impartial vocational expert testified at the hearing. (Id.) The ALJ took the case under advisement at the conclusion of the hearing, and issued a written decision on April 5, 2013 finding Petitt not disabled on the alleged onset date. (Id. at 24.) The ALJ's written decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since September 28, 2010, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairment: degenerative disc disease (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526.)

5. After careful consideration of the entire record, the Administrative Law Judge finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can lift 20-25 pounds occasionally and 10-12 pounds frequently; stand or walk for four hours in an eight-hour workday; sit six hours in an eight-hour workday; with occasional ability to climb, balance, stoop, kneel, crouch, and crawl.

6. The claimant is capable of performing past relevant work as a medical records clerk DOT # 205.362-018. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from September 28, 2010, through the date of this decision (20 CFR 404.1520(f)).

(Id. at 16–24.)

On July 2, 2014, the Appeals Council denied Petitt' request for review of the ALJ's decision, thereby rendering that decision the final decision of the Social Security Administration ("SSA"). (Id. at 1.) This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. Review of Record

The Court adopts the summary of Petitt's records from the ALJ's decision. (A.R. 16–23.) In addition, Petitt submitted medical records pertaining to her lumbar region that were not available prior to the hearing. (A.R. 369–95.) Specifically, these records show that, on March 18, 2013, Petitt's treating surgeon, Dr. Dinkins, admitted her for a revision of decompressive laminectomy from L3-S1, revision of foranitomy at the L3-L4, L4-L5, and L5-S1 bilaterally, removal of pedicle screws on the right side at the L5 and S1 level with set screws, rods and in situ fusion with a combination of NovaBone, morcellized autograft bone, and bone aspirate from the vertebral body that was put into posterolateral gutters from the L3 to the S1 level bilaterally. (Id. at 372.)

After this surgery, on April 26, 2013, Petitt reported clear discharge from the surgical wound and a headache and believed it was a spinal leak. (Id. at 374.) Petitt underwent a CT scan of her head and back which showed a possible seroma, was discharged, and instructed to follow up with Dr. Dinkins. (Id. at 381.) Five days later, Dr. Dinkins examined Petitt's wound, expressed a great deal of fluid, and discharged her with instructions to return if it re-accumulated. (Id.) On June 1, 2013, Petitt complained of headache, photophobia, and extreme pain in her back that prevented her from walking, and was admitted to Dr. Dinkins for probable spinal fluid leakage. (Id.) That same day, Petitt underwent a revision decompressive laminectomy from L3-S1, irrigation of her lumbar spine incision, removal of her bone graft, necrotic tissue repair, inadvertent derotomy with Tisseel, and on situ fusion with a combination of NovaBone that was put into posterolateral gutters from the L3 to the S1 level on the right side only. (Id. at 384.)

3

### III. Conclusions of Law

#### A. Standard of Review

This Court reviews the final decision of the SSA to determine whether substantial evidence supports that agency's findings and whether it applied the correct legal standards. Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means "'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the agency's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." Brooks v. Comm'r of Soc. Sec., 531 F. App'x 636, 641 (6th Cir. 2013) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). The agency's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion. See Hernandez v. Comm'r of Soc. Sec., 644 F. App'x 468, 473 (6th Cir. 2016) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).

Accordingly, this Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (quoting Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Where, however, an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." Miller, 811 F.3d at 833 (quoting Gentry v. Comm'r of Soc. Sec., 741 F.3d 708, 722 (6th Cir. 2014)).

#### B. Five-Step Inquiry

The claimant bears the ultimate burden of establishing entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

4

Case 3:14-cv-01716 Document 16 Filed 04/06/17 Page 4 of 10 PageID #: 463

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). The SSA considers a claimant's case under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> (1) [A] claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings;
>
> (2) a claimant who does not have a severe impairment will not be found to be disabled;
>
> (3) a finding of disability will be made without consideration of vocational factors if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart B of the Regulations. Claimants with lesser impairments proceed to step four;
>
> (4) a claimant who can perform work that he has done in the past will not be found to be disabled; and
>
> (5) if a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Parks v. Soc. Sec. Admin., 413 F. App'x 856, 862 (6th Cir. 2011) (citing Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden through step four of proving the existence and severity of the limitations her impairments cause and the fact that she cannot perform past relevant work; however, at step five, "the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functioning capacity[.]" Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 628 (6th Cir. 2016) (quoting Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004)).

The SSA can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. See Anderson v. Comm'r of Soc. Sec., 406 F. App'x 32, 35 (6th Cir. 2010); Wright v. Massanari, 321 F.3d 611, 615–16 (6th Cir. 2003). Otherwise, the grids only function as a guide to the disability determination. Wright, 321 F.3d at 615–16; see Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's prima facie case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert testimony. Anderson, 406 F. App'x at 35; see Wright, 321 F.3d at 616 (quoting SSR 83-12, 1983 WL 31253, at *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity ("RFC") at steps four and five, the SSA must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Glenn v. Comm'r of Soc. Sec., 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

### C. Weighing Medical Source Evidence

The administrative regulations implementing the Social Security Act impose standards on the weighing of medical source evidence. Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011). The significant deference accorded to the Commissioner's decision is conditioned on the ALJ's adherence to these governing standards. In Gentry v. Commissioner of Social Security, the Sixth Circuit re-stated the responsibilities of the ALJ in assessing medical evidence in the record in light of the treating source rule:

> Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings. 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1512(b); 20 C.F.R. § 404.1513. The second is known as the "treating physician rule," see Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 242 (6th Cir. 2007), requiring the ALJ to give controlling weight to a treating physician's opinion as to the nature and severity of the claimant's condition as long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2) (language moved to 20 C.F.R. § 404.1527(c)(2) on March 26, 2012). The premise of the rule is that treating physicians have the best detailed and longitudinal perspective on a claimant's condition and impairments and this perspective "cannot be obtained from objective medical findings alone." 20 C.F.R. § 416.927(d)(2) (language moved to 20 C.F.R. § 416.927(c)(2) on March 26, 2012). Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors. Rogers, 486 F.3d at 242. In all cases, the treating physician's opinion is entitled to great deference even if not controlling. Id. The failure to comply with the agency's rules warrants a remand unless it is harmless error. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 545–46 (6th Cir. 2004).

741 F.3d 708, 723 (6th Cir. 2014).

The Sixth Circuit has also made clear that an ALJ may not determine the RFC by failing to address portions of the relevant medical record, or by selectively parsing that record—*i.e.*, "cherry-picking" it—to avoid analyzing all the relevant evidence. Id. at 724 (citing Minor v. Comm'r of Soc. Sec., 513 F. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); Germany-Johnson v. Comm'r of Soc. Sec., 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports.")). This is particularly so when the evidence ignored is from a treating physician. Ignoring medical evidence from a treating source in

7

fashioning the RFC, without a proper analysis of why such action is taken, cannot be harmless error because it "undermines [the ALJ's] decision" to overlook evidence that could have potentially supported a more restrictive RFC or even a finding of disability. Gentry, 741 F.3d at 729 (citations omitted); Grubbs v. Comm'r of Soc. Sec., No. 12–14621, 2014 WL 1304716, at *2 (E.D. Mich. Mar. 31, 2014) ("The absence of a review of treatment records from a treating source and the lack of analysis of such made it impossible for the ALJ to properly assess whether the Plaintiff was disabled and/or whether Plaintiff had the residual functional capacity to do any work.").

### D. Petitt's Statement of Errors

In addition to seeking a remand and judgment on the administrative record, pursuant to the fourth sentence of 42 U.S.C. § 405(g), Pettit also seeks a remand pursuant to the sixth sentence of § 405(g), so that the agency may reconsider its decisions in light of the new and material evidence regarding subsequent surgeries to revise her prior laminectomy, which involved both removal of hardware and an additional level of her spinal column. (Doc. No. 12 at 13.) Sentence six of § 405(g) allows a remand to consider evidence that was not previously before the ALJ, "but only upon a showing that there is new evidence which is material and that there is good cause for failure to incorporate such evidence in the record in the prior proceeding." The party seeking remand bears the burden of demonstrating newness, materiality, and good cause. Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 483 (6th Cir. 2006).

Commissioner does not dispute that the evidence is new or that there was "good cause for failure to incorporate such evidence in the record in the prior proceeding." 42 U.S.C. § 405(g). Rather, Commissioner claims the evidence is "not material to the time period in question" because "it does not show a 12-month disability period and is consistent with the evidence the ALJ

8

Case 3:14-cv-01716 Document 16 Filed 04/06/17 Page 8 of 10 PageID #: 467

reviewed that showed a worsening condition in December 2012." (Doc. No. 13 at 13.) Material evidence is evidence that would likely change the agency's decision. Bass v. McMahon, 499 F.3d 506, 513 (6th Cir. 2007). Sentence six remand is not a vehicle for the consideration of evidence that a claimant's condition worsened after the hearing. E.g., Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 685 (6th Cir. 1992). Moreover, the new evidence must be probative of the severity of claimant's symptoms during the period considered by the ALJ; evidence is not material if it shows that the impairments or severity increased after the hearing. E.g., Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 478 (6th Cir. 2003).

One of the primary findings of the ALJ was that Petitt's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely credible because they are "subjective[,]" "subsequent diagnostic testing of the lumbar spine revealed satisfactory alignment of her hardware[,]" and her treating spinal surgeon stated that she was doing well clinically. (A.R. 22.) In addition, the ALJ explained she gave "little weight" to the opinions of Dr. Dinkins and Dr. Perrigan (Pettit's treating physicians)—who opined that Petitt would be incapable of full-time work—because their opinions were too "restrictive" and Dr. Dinkins "based at least some restrictions on the claimant's subjective complaints" while finding she was doing well post-operatively. (Id.) This indicates that the ALJ considered Pettit's post-operative condition and the lack of objective findings regarding the same material to her initial decision. Although the ALJ was aware of the possibility that Pettit might undergo a second surgery, she attributed it to a hardware issue and held that it "does not indicate or even suggest disability." (Id.)

Pettit claims that the new information shows that "there may very well have been an objective basis for her continued pain as demonstrated by the need for the subsequent procedure." (Doc. No. 12 at 14.) The Court finds this credible because, contrary to the ALJ's assertion, Pettit's

9

second laminectomy not only repaired hardware in her back, but also involved more spinal levels and, subsequently, needed revision because of spinal fluid leakage. If, in fact, her degeneration at L3 was advanced enough in March 2013, a mere month after her hearing, to perform a surgery, it is possible that her complaints of pain during the 12 month period were not without objective medical basis, but due to an actual underlying, physical impairment that existed during her 12-month disability period. This is a determination that an ALJ is best situated to resolve. Accordingly, the Court finds that a remand under sentence six of 42 U.S.C. § 405(g) is appropriate and, given that the consideration of this new evidence will result in a new decision by the ALJ—with, possibly, different testimony from a vocational expert and weight assigned to Petitt's treating physicians—obviates the need to address Petitt's other statements of error. (Doc. No. 12 at 7.)

## IV. Conclusion

For the reasons explained above, Petitt's Motion for Judgment on the Administrative Record (Docket No. 11) will be **GRANTED** pursuant to the sixth sentence of 42 U.S.C. § 405(g) and the case will be **REMANDED** to the ALJ for a decision incorporating a review of the new evidence**.**

An appropriate order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE